United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SHIEW-TYAN YANG, et al.,

Appellants,

v.

705A INVESTORS, LLC, et al.,

Appellees.

Case No. 15-cv-05518-BLF

**ORDER AFFIRMING BANKRUPTCY COURT'S ORDER ON MOTION TO CONVERT CHAPTER 13 CASE TO CHAPTER 7 AND MOTION FOR RELIEF FROM AUTOMATIC STAY**

[Re: ECF 18]

Appellants Shiew-Tyan and Li-Yeh Yang appeal the bankruptcy court's order determining that they are not eligible to be debtors under chapter 13 of the Bankruptcy Code because their unsecured, liquidated, and non-contingent debts exceed the statutory chapter 13 limit of $383,175. For the reasons stated herein, the bankruptcy court's order is AFFIRMED.

## I. BACKGROUND

Appellants Shiew-Tyan and Li-Yeh Yang ("Yangs") are members of Quail Meadows, LLC, a real estate development company. Mot. 2, ECF 18; Opp. 4, ECF 21. Appellees 705A Investors, LLC and 1115 Investors, LLC ("Investors") are two groups of investors who loaned money to Quail Meadows for the purposes of acquiring and constructing real property developments. Mot. 1-2, ECF 10; Opp. 4, ECF 12. The parties dispute whether these loans had been paid off and whether the Yangs guaranteed the loans.

The Yangs argue that they did not personally guarantee the loans for several reasons including that they were never informed any documents they signed included personal obligations and no one ever saw them sign the alleged guarantees. Mot. 2-4, ECF 18.

United States District Court
Northern District of California

Meanwhile, the Investors argue that these loans were secured by personal guarantees signed by the Yangs. Opp. 4, ECF 21. From 2003 to 2007, the Yangs executed seven loan extensions or modification agreements on the loans. *Id.* at 5. On each extension or modification agreement, the Yangs acknowledged the outstanding balance that was owed on the loans. *Id.* In September of 2010, Quail Meadows defaulted on one of the loans; the principal balance on that loan was $1,428,116. *Id.* at 6. The loan was secured by property which was sold at a trustee sale for $500,000, leaving a principal balance owed on the loan of $928,116. *Id.* at 6. In December of 2010, Quail Meadows defaulted on the second loan; the principal balance on that loan was $790,158. *Id.* The loan was also secured by property which sold at a trustee sale for $50,000, leaving a principal balance owed on the loan of $740,158. *Id.*

On June 17, 2015, the eve of a state court trial regarding the loans, the Yangs filed for chapter 13 bankruptcy. Mot. 2, ECF 18; Opp. 8, ECF 21. On August 11, 2015, the Investors filed a motion to convert the chapter 13 bankruptcy to chapter 7 on the basis that it had been filed in bad faith. Motion to Convert Hearing 6:11-16, ECF 15-36. On November 4, 2015, the bankruptcy court found the debtors had not filed their bankruptcy in bad faith and denied the motion to convert the chapter 13 bankruptcy case to chapter 7. *Id.* at 9:18-23. However, the bankruptcy court found the debtors were ineligible for chapter 13 bankruptcy because the amount of their noncontingent, liquidated and unsecured debts exceeded the statutory limit of $383,175. *Id.* at 3:5-6:6. As a result, the bankruptcy court ordered that the debtors' bankruptcy case be dismissed on November 17, 2015 unless they converted the case to any available chapter by November 16, 2015. Order on Motion to Convert, ECF 15-27.

On November 12, 2015, the debtors filed a motion to stay the bankruptcy court's ruling pending appeal. Mot. to Stay Pending Appeal, ECF 15-29. The debtors argued that without a stay, any appeal would be moot. Memorandum 2, ECF 15-29. On November 16, 2015, the bankruptcy court denied the Yangs' motion to stay pending appeal but issued a temporary stay to allow them to seek a stay pending appeal from the appellate court. Order Denying Stay Pending Appeal and Granting Temporary Stay, ECF 15-31. On July 27, 2016, this Court denied the Yangs' motion to stay pending appeal. ECF 26. Currently before the bankruptcy court, the

United States District Court
Northern District of California

Yangs and Investors are disputing whether the denial of a stay pending appeal renders the appeal moot since the bankruptcy court's order stated the Yangs' bankruptcy case would be dismissed if it was not converted to any appropriate chapter by November 16, 2015. Case No. 15-52070, (Bankr. N.D. Cal.), ECF 103 (Ex Parte Application for Notice of Dismissal of Bankruptcy Case), ECF 105 (Debtor's Opposition to Claimants' Ex Parte Application For Notice Of Dismissal Of Bankruptcy Case).[1] Since the bankruptcy court has not yet decided whether to dismissthe Yangs' bankruptcy case, the Court decides the Yangs' appeal.

## II. ISSUES ON APPEAL

The Yangs present the following issues on appeal:

1. Did the Bankruptcy Court err in determining that Creditors' unsecured claims should be included so as to disqualify Debtors' qualification for chapter 13 pursuant to Bankruptcy Code §109(e)?
2. Did the Bankruptcy Court err in determining that the unsecured claims of Creditors were liquidated as of the date the bankruptcy petition was filed?
3. Did the Bankruptcy Court err in determining that the unsecured claims of Creditors were not contingent as of the date the bankruptcy petition was filed?

Mot. 1, ECF 18.

## III. STANDARD OF REVIEW

The court reviews the bankruptcy court's conclusions of law de novo. *Citibank v. Eashai (In re Eashai)*, 87 F.3d 1082, 1086 (9th Cir. 1996). Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. Fed. R. Bankr. P. 8013. A factual finding is clearly erroneous if, after examining the evidence, the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985).

[1] The Investors filed a proposed sur-reply brief. Since the local rules do not contemplate the filing of sur-reply briefs, the Court does not consider the Investors' sur-reply.

United States District Court
Northern District of California

## IV. DISCUSSION

### A. Standard of Review

The parties disagree over the appropriate standard of review. The Yangs argue that "the Bankruptcy Court committed multiple errors of law." Mot. 10, ECF 18. Therefore, the Yangs claim the standard of review is de novo. *Id*. The Investors argue that the issue of whether a debt is contingent or liquidated is a question of law subject to de novo review but the amount of the debt is a question of fact which may not be reversed unless clearly erroneous. Opp. 2, ECF 21.

The Court agrees with the Investors. The question of whether a debt is contingent or liquidated is a question of law subject to de novo review while the amount of a debt is a question of fact which cannot be reversed unless clearly erroneous. *Nicholes v. Johnny Appleseed of Wash. (In re Nicholes)*, 184 B.R. 82, 86 (B.A.P. 9th Cir. 1995).

### B. Issues on Appeal

The Yangs list the issues on appeal in the following order: whether the bankruptcy court erred in concluding they exceeded the chapter 13 debt limit, whether the bankruptcy court erred in concluding that their debts are liquidated, and whether the bankruptcy court erred in concluding that their debts were not contingent. Mot. 1, ECF 18.

In discussing these issues, the Court addresses them in the following order: (1) whether the bankruptcy court erred in determining that the Yangs' debts are liquidated, (2) whether the bankruptcy court erred in concluding that the Yangs' debts are noncontingent, and (3) whether, having found that the Yangs' debts are liquidated and noncontingent, the bankruptcy court erred in determining the Yangs' exceed the chapter 13 debt limit.

### C. The Yangs' Debts Are Liquidated

The Yangs argue that their debt is not liquidated because it is not subject to "ready determination and precision in computation of the amount due." Mot. 12-13, ECF 18. First, the Yangs argue that the amount of their debt could not be resolved with a simple hearing because in state court, the Investors admitted that resolution would take an extensive and contested hearing in which substantial evidence would be necessary to establish amounts and liability. *Id*. at 13. According to the Yangs, the Investors stated that it would take a two- to three-week jury trial and

had an exhibit list containing 298 exhibits and a witness list having 15 witnesses. *Id*. at 14, 18-19. Second, the Yangs argue that the bankruptcy court relied upon inadmissible evidence to conclude their debt was readily determinable. *Id*. at 16-17. Third, the Yangs argue that their claims were not liquidated because they "hotly dispute[]" both liability on the guarantees and the alleged damages. *Id*. at 13-15, 18.

The Investors counter that the evidence undermines the Yangs' assertion that the possibility of liability on their debts is remote and not subject to ready determination. Opp. 16-18, ECF 21. According to the Investors, merely disputing the existence of liability does make a debt unliquidated. *Id*. at 19-20. The Investors also argue that their estimated state court trial time included not only the dispute over guarantees but all of the Yangs' claims in their cross-complaint. *Id*. at 14. The Investors further claim that their exhibit list was going to be reduced before trial. *Id*.

Starting with the Yangs' first argument, under § 109(e), debt is liquidated if it is subject to "ready determination and precision in computation of the amount due." *In re Fostvedt*, 823 F.3d 305, 306 (9th Cir. 1987) (quoting *In re Sylvester*, 19 B.R. 671, 673 (9th Cir. B.A.P. 1982)). "The definition of 'ready determination' turns on the distinction between a simple hearing to determine the amount of a certain debt, and an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts or liability." *In re Wenberg*, 94 B.R. 631, 634 (9th Cir. B.A.P. 1988) aff'd 902 F.2d 768 (9th Cir. 1990).

The Yangs' argument that a complex hearing would be needed centers around the fact that the Investors admitted in state court proceedings involving these debts that their "best estimate is for a two- to three-week trial." Record on Appeal 18-20, ECF 14-37. However, the Yangs place an undue emphasis on this statement because the Investors' estimate of the length of the trial does not indicate what issues were involved in the state court trial or why this estimate was multiple weeks. For example, in reviewing the state court trial brief, it is clear that the Yangs had at least one cross-claim pending and that liability was contested. *Id*. at 11. But more to the point, the Court does not have to speculate on whether the Investors' estimated a trial length of two- to three-week because, as the Yangs believe, they needed a long hearing to prove the amount of the debt or whether they needed time for other issues. In the state court trial brief, the Investors

United States District Court
Northern District of California

expressly state that "[t]he debt amount is not reasonably in dispute." *Id*. at 5. It is clear then that the two- to three-week trial estimate did not reflect the Investors' belief that the amount of the debt would be difficult to prove and require a lengthy hearing. As to the Investors' exhibit and witness lists, it is all too common that parties place more exhibits and witnesses on their lists than they actually use in a trial. Given that there were other issues involved in the trial, simply pointing to a total number of exhibits and witnesses is not sufficient to show that a lengthy hearing would be needed to determine the amount of the debt. As with the trial estimate, it is clear from the Investors' trial brief that they did not expect the amount of the debt to be a contentious issue. The Yangs cannot pick and choose statements from the Investors' trial brief that they believe are favorable without recognizing other portions of the trial brief that undermine their argument. Thus, contrary to the Yangs' argument, the Investors' statements in state court were not a judicial admission that the amount of their debt could not be determined with a simple hearing.

As to the Yangs' second argument, that the bankruptcy court relied upon inadmissible evidence, the Yangs misconstrue the bankruptcy proceedings. Simultaneously with the filing of their opposition to the Investors' motion to convert the chapter 13 case to chapter 7, the Yangs objected to the Investors' motion as not being supported by admissible evidence. Record on Appeal 20-22, ECF 14-32. As part of their reply, the Investors filed additional supporting declarations. Appendix 40-159, ECF 21-4 to ECF 21-10. The Yangs then filed a second set of objections to this new evidence filed in a reply brief. Appendix 11, ECF 21-2. The bankruptcy court acknowledged their objections and gave them an opportunity to file responsive documents. Appendix 343:18-345:5; *see also Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("[W]here new evidence is presented in a reply…the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond."). The Yangs declined that offer, and by doing so, waived their opportunity to contest that evidence on appeal. *Id*. Although the Yangs claim they never waived any objections, Reply 4, ECF 22, they never address the bankruptcy court's invitation to file responsive documents in their briefs before this Court. Accordingly, the Yangs waived any objections to the evidence.

As to the Yangs' third argument regarding the hotly contested dispute over liability, in *In*

*re Slack*, 187 F.3d 1070 (9th Cir. 1999), the Ninth Circuit held that "disputes regarding liability arising out of contract and tort claims do not render a debt unliquidated." *Slack*, 187 F.3d at 1074 (collecting cases) ("The majority of the courts outside this circuit that have considered the question have…ruled that a dispute regarding liability does not necessarily render a debt unliquidated."). In *In re Ho*, 274 F.R. 867 (9th Cir. B.A.P. 2002), the Ninth Circuit Bankruptcy Appellate Panel discussed the Ninth Circuit's holding in *Slack* and determined that *Slack* does not "preclude consideration of the remoteness of liability." *Ho*, 274 F.R. at 875. According to that court, such remoteness of liability should be considered because "[b]ankruptcy schedules are supposed to be over-inclusive…If listing a debt that is more theoretical than real would defeat chapter 13 eligibility, then we will have created a powerful disincentive to the accurate, complete and candid schedules that are vital to a bankruptcy system, which relies on self-reporting." *Id.*

This Court has reviewed the Ninth Circuit's jurisprudence on whether debts are liquidated and finds that the Yangs' debts are liquidated. The central issue presented by the Yangs' third argument is whether their dispute regarding liability fits within bankruptcy appellate panel's holding in *Ho* and this Court finds that it does not.

In *Ho*, the debtor scheduled two claims that were the subject of two lawsuits as unliquidated. *Id*. at 871. In the first lawsuit, the debtor was one of the defendants and the demand for damages was more than $50,000. *Id*. The bankruptcy court fixed $50,000 as the liquidated debt for that lawsuit. *Id*. In the second lawsuit, debtor was not named as a defendant but she listed the lawsuit on her bankruptcy schedule because "of her potential liability for a sanctions-type award for having intermeddled in that case." *Id*. at 873. The bankruptcy court determined that lawsuit reflected a liquidated debt of $640,792.50, the amount of the open book account being sued upon. *Id*. at 872. The Bankruptcy Appellate Panel found that the debtor was not a party to the lawsuit and that her personal liability for the full amount of the open book account was "far-fetched." *Id*. at 873. In analyzing *Slack,* the court determined that in situations such as this, the remoteness of liability should be considered in order to incentivize the complete and accurate reporting of all debts even those occurring "at the margin of liability." *Id*. at 875.

The Yangs have not shown this case fits within the holding of *Ho*. First, while the Yangs

vigorously contest their liability, they are alleged to be direct parties to the disputed contract. As the bankruptcy court stated, the debts in this action involve "a contractual dispute arising from an asserted guaranty, the underlying property has been foreclosed, and at least the minimum amount due based on the deficiency following foreclosure is easily determined. The debtors are purported guarantors and there are guarantees bearing their signature." In contrast, in *Ho*, the debtor was not a party to the action that gave rise to the potential liability. As such, this case does not present the same "remoteness" of liability as *Ho*. Second, the policy considerations of making sure that debtors are not dis-incentivized to submit over-inclusive bankruptcy schedules is not an issue with Investors' claims. These alleged debts do not fall in a gray area but appear to firmly belong on the Yangs' bankruptcy schedules. The Yangs never argue, nor does the Court see how they could, that they were including the Investors' claims to be over-inclusive and would not have otherwise disclosed them. Accordingly, the Yangs' debts are liquidated.

**D. The Yangs' Debts Are Noncontingent**

The Yangs argue that their claims are contingent because there is not sufficient evidence a contract was formed with the Investors. As support, the Yangs argue that (1) the Investors have not been able to prove the existence of any contracts in more than five years of litigation; (2) the purported guarantees submitted by the Investors are undated and from an unknown source; (3) the Investors have not authenticated or provided a chain of custody for the purported contracts; and (4) they have no recollection of seeing or signing the guarantees. Mot. 20-24, ECF 10. Further falling within this group, the Yangs maintain that they never entered into the contracts but even if they did sign a contract, (1) they were never informed that any guarantees would be required; (2) the guarantees were in a stack of documents that they signed alone and at an escrow office on behalf of Quail Meadows; and (3) the Investors had a duty to disclose certain facts and did not do so. *Id.*

The Investors counter that the Yangs waived this issue by not raising the aforementioned arguments during the bankruptcy proceedings. Opp. 21-22, ECF 21. The Investors also argue that the Yangs' liability is non-contingent because their debts are contractual in nature, involve written personal guarantees, and the principal obligor whose obligations the Yangs guaranteed, defaulted

on its loans. *Id*.

As an initial matter, the Court is troubled by the fact that the Yangs did not, as the Bankruptcy Court stated, "significantly contest[]" the contingent nature of their loans in their briefing before the bankruptcy court. Motion to Convert Hearing 3:10, ECF 15-36. The Court has scoured the Yangs' briefing before the Bankruptcy Court and fails to see where the Yangs raise the issues regarding the contingent nature of the claims they now raise before this Court. In their opposition to Appellant's motion to convert below, the Yangs use the word "contingent" or "non-contingent" a total of five times, and never go beyond asserting in a conclusory manner that "that the Creditors' claims against Debtors are contingent and unliquidated." Opp. to Motion to Convert, ECF 14-31. In their motion for an *ex parte* stay, the Yangs' only argument as to the contingent nature of their claims is that they "remained contingent on the petition date as to formation of any contract." Mot. to Stay 3, ECF 15-20. "Generally, we do not consider arguments not 'properly raise[d]' in the bankruptcy court." *In re Fee*, Case No. CC-14-1387, 2015 WL 3989062, at *6 (B.A.P. 9th Cir. June 30, 2015). Here, the Yangs are putting forth specific arguments regarding the contingent nature of the claims that were not made before the bankruptcy court. Thus, the Court finds the Yangs have waived their arguments regarding the contingent nature of their claims.

That said, the Court, after reviewing the record and the Yangs' arguments, finds that their claims are non-contingent. Although "contingent" is not defined in the Bankruptcy Code, the Ninth Circuit has provided a definition in *In re Fostvedt*, 823 F.3d at 306-07 (citations omitted):

> [A] contingent debt is "one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor." [W]here a contract was entered into by parties who did not contemplate that any further act had to be completed in order to trigger contractual liability, then such liability would not be contingent.

Although the Yangs' liability under the guarantees could have been classified as a contingent liability *at the time* the guarantees were executed, the guarantees ceased to be "contingent" when the principal obligor, Quail Meadows, whose obligations the Yangs guaranteed, defaulted on its loans. *See In re Enriquez*, 315 B.R. 112, 122 (Bankr. N.D. Cal. 2004)

(holding that a debt owed by a guarantor is noncontingent where the principal obligor has defaulted). Once the principal obligor defaulted, there was no further act that had to be completed in order for the Yangs to be liable under the guarantees and thus, the guarantees are not contingent.

The Yangs provide the Court with several arguments as to why the guarantees are contingent, broadly dealing with whether a proper contract was formed (disputing liability). The Yangs' own briefing discussing *In re Fostvedt* reveals the flaw in their position. According to the Yangs, *Fostvedt* is distinguishable because "the debtor did not dispute…liability...[here, ] there is [a] dispute regarding liability…" Mot. 18-19, ECF 10. But merely because a debt is disputed does not render it contingent. *See*, e.g., *In re Crescenzi*, 69 B.R. 64, 66 (S.D.N.Y. 1986) ("The limitations contained in the pertinent part of § 109(e) would be rendered meaningless if prospective debtors could avail themselves of Chapter 13's provisions merely by disputing the amount of their unsecured debt."); *see also Matter of Vaughan*, 36 B.R. 935, 938-39 (N.D. Ala. 1984) ("This Court cannot find in any legislative history where Congress contemplated allowing disputed claims to be excluded from the calculation of the maximum allowable debt. This Court can only speculate that any such statutory language would cause a flood of 'disputes' over liabilities which, if allowed to translate a claim into an unliquidated claim could utterly thwart the judicial process in bankruptcy proceedings."). Moreover, in this case, the Yangs' disputes as to liability do not even appear to be bona fide. Although the Yangs drop every conceivable reason as to why these guarantees are not valid (from not remembering signing them to not being given sufficient disclosures), the Yangs notably never claim that signatures on these guarantees are not theirs. Even if the Yangs' disputes were bona fide, it is not clear that those disputes should make the debt contingent. *See In re Albano*, 55 B.R. 363, 368 (N.D. Ill. 1985) (explaining how allowing "bona fide disputes" to make a claim contingent in a voluntary bankruptcy filing under Chapter 13 "would tend to generate a circular (and self-defeating) barrier to administration of Chapter 13 proceedings if the bankruptcy court had to pass on the merits of all claims before the proceeding could even get under way").

Finally, in their reply brief, the Yangs provide yet another reason why the guarantees they

executed are no longer valid. Reply 7-11, ECF 22. According to the Yangs, loan modification agreements reveal that they have no personal liability to the Investors and that the loan modification agreements cancelled any outstanding guarantees. *Id*. First, this argument was not made in the bankruptcy court and is therefore waived. *Fee,* 2015 WL 3989062, at *6. Second, this argument is of the same variety as Yangs' other arguments disputing the contingent nature of the loan. As the Court explained with respect to Yangs' other arguments, disputes regarding liability does not make a claim contingent. Thus, Yangs' claims are non-contingent.

**E. The Bankruptcy Court's Ruling that the Yangs' Debts Exceed the Chapter 13 Debt Limits is Not Clearly Erroneous**

The Yangs' third issue on appeal is framed as "Did the [b]ankruptcy [c]ourt err in determining that Creditors' unsecured claims should be included so as to disqualify Debtors' qualification for chapter 13 pursuant to Bankruptcy Code 109(e)?" Mot. 1, ECF 18. The Yangs do not separately brief this issue and if the Yangs believe that they fall under the chapter 13 threshold by virtue of their debts being contingent and non-liquidated, then it appears this issue is superfluous to the other two issues raised in this appeal. By finding, as explained above, that the Yangs' debts are liquidated and non-contingent, their debts exceed the Chapter 13 debt limits.

To the extent the Yangs are disputing the actual amount of their non-contingent and liquidated debt, the determination of the amount of a debt is a question of fact that cannot be reversed unless clearly erroneous. *Nicholes*, 184 B.R. at 86. The Yangs have not explained how any of the bankruptcy court's findings regarding the amount of their debt is clearly erroneous. The Court has reviewed the record and finds that the bankruptcy court's determination as to the amount of the debt is not clearly erroneous. Between September 2003 and October 2007, the Yangs signed seven loan extension documents or loan modification agreements, which acknowledge the current loan balance. Appendix 42, 74-81, 130-132, 139-159, 197-201, ECF 21. In 2010, the foreclosure trustee reported the loan balances as of the date of the foreclosure sales, the results of the foreclosure sales, and the sales proceeds that were credited toward the loan balances. Appendix 42-43, 82-83, ECF 21. In September 2010, the balance of the 705A Loan was $928,116 and in December 2010, the balance of the 1115 Loan was $740,158. *Id.*

Accordingly, it was not clear error for the bankruptcy court to determine that amount of the Yangs' non-contingent and liquidated debt totaled in excess of the $383,175 statutory limit for chapter 13.

**V. CONCLUSION**

For the reasons set forth above, the Court AFFIRMS the order of the bankruptcy court.

The Clerk of the Court shall close the file.

**IT IS SO ORDERED.**

Dated: August 24, 2016

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California